IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, et al., : : : | |
| Plaintiffs, : | Case No. 2:20-cv-4813 |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | |
| : | Magistrate Judge Kimberly A. Jolson |
| CHARLES E. JONES, et al., : | |
| : | |
| Defendants, : | |
| : | |
| FIRSTENERGY CORP., : | |
| : | |
| Nominal Defendant. : | |

**OPINION & ORDER**

This matter is before the Court on the Individual Defendants' Motion To Certify Order For Interlocutory Appeal Pursuant To 28 U.S.C. § 1292(b). (ECF No. 95).[1] For the reasons set forth below, Defendants' Motion is **DENIED**.

**I. BACKGROUND**

This Court set out the factual history of this case in its May 11, 2021 Opinion and Order (ECF No. 93) and incorporates those facts as if fully set forth herein. *Inter alia*, the Court denied

---

[1] The Motion initially was filed by 17 Individual Defendants and Nominal Defendant FirstEnergy Corp. (ECF No. 95). Defendants Paul T. Addison, Jerry Sue Thornton, William T. Cottle, George M. Smart, and Justin Biltz did not join. After formation of the Special Litigation Committee, FirstEnergy Corp. withdrew its participation in the Motion. (ECF No. 126). Therefore, the remaining movants are Defendants Michael J. Anderson, Steven J. Demetriou, Michael J. Dowling, Julia L. Johnson, Charles E. Jones, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil III, Christopher D. Pappas, James F. Pearson, Sandra Pianalto, Robert P. Reffner, Luis A. Reyes, Steven E. Strah, K. Jon Taylor, Leslie M. Turner, and Ebony Yeboah-Amankwah. The movants, for purposes of this Motion, will be referred to as either the "Individual Defendants" (despite the absence of five of their colleagues) or simply "Movants."

1

Defendants' Motion To Dismiss, finding that Plaintiffs sufficiently stated their claim under Section 14(a) of the Securities Exchange Act of 1934. As relevant here, the Court concluded that Plaintiffs set forth "detailed allegations" that support a finding of causation and meet the "essential link" requirement under Section 14(a). (*Id.* at 17, 33–34).

Individual Defendants filed their Motion on May 28, 2021, seeking to obtain an interlocutory appeal of that holding. (ECF No. 95). Specifically, they ask this Court to certify the following question of law for appellate review:

> Whether a complaint sufficiently pleads causation for a claim under Section 14(a) of the Securities Exchange Act of 1934, where the complaint alleges that purported misstatements in a proxy statement permitted directors to win re-election to the company's board and those directors allegedly then breached their fiduciary duties, but does not allege that the purported misstatements themselves directly resulted in economic harm?

(ECF No. 95-1 at 4).

## II. LAW AND ANALYSIS

Interlocutory appeals are generally disfavored and are reserved for "exceptional cases." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). As the Sixth Circuit long has held, the legislative history of § 1292(b) makes it "quite apparent" that the statute should be "sparingly applied," as it is "not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." *Kraus v. Bd. of Cnty. Road Comm'rs*, 364 F.2d 919, 922 (6th Cir. 1966). A party seeking certification "has the burden of showing exceptional circumstances exist warranting an interlocutory appeal." *Alexander v. Provident Life & Acc. Ins. Co.*, 663 F. Supp. 2d 627, 639 (E.D. Tenn. Oct. 16, 2009).

Under § 1292(b), this Court may certify an interlocutory appeal only when three criteria are satisfied: (1) the "order involves a controlling question of law"; (2) "there is substantial ground

for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of litigation." 28 U.S.C. § 1292(b); *Cook v. Erie Ins. Co.*, 2021 WL 1056626, at *2 (S.D. Ohio Mar. 19, 2021). If any of these factors is absent, the certification cannot issue. Additionally, "doubts regarding appealability should be resolved in favor of finding that the interlocutory order is not appealable." *In re Nat'l Prescription Opiate Litig.*, 2020 WL 3547011, at *1 (N.D. Ohio June 30, 2020) (internal quotation omitted).

"[E]ven where the statutory criteria are met," the Court still retains "broad discretion to deny certification." *In re Transdigm Grp., Inc. Sec. Litig.*, 2018 WL 11227556 (N.D. Ohio Jan. 30, 2018) (internal quotation omitted). "Ultimately, allowing certification of an interlocutory appeal lies within the discretion of the district court." *Lang v. Crocker Park, LLC*, 2011 WL 3297865, at *2 (N.D. Ohio July 29, 2011) (citing *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995)).

### A. Controlling Question of Law

Movants first must show that their proposed issue for appeal involves a controlling question of law. To be controlling, "an issue need not necessarily terminate an action," but it must be one that "could materially affect the outcome of the litigation in the district court." *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992) (internal quotations omitted).

The controlling question of law advanced by Movants concerns the causation element of Plaintiffs' Section 14(a) claim. To plead a claim under Section 14(a), Plaintiffs are required to show that "the proxy statement was an essential link to the accomplishment of the transaction that harmed plaintiff." (ECF No. 93 at 13, citing *Smith v. Robbins & Myers, Inc.*, 969 F. Supp 2d 850, 868 (S.D. Ohio Aug. 27, 2013); and *In re Gas Nat., Inc.*, 2015 WL 3557207, at *12 (N.D. Ohio

June 4, 2015)). This principle is referred to in the caselaw as "transaction causation." (*Id.* at 29, citing *Smith*, 969 F. Supp. 2d at 868).

As this Court summarized in its Order denying the Motion to Dismiss, Plaintiffs addressed transaction causation by pleading that the proxy statements misrepresented FirstEnergy's oversight of, and compliance in, its lobbying activities and expenditures, in the face of repeated formal proposals by shareholders for increased transparency and oversight; that those misrepresentations in the proxy statements caused shareholders to re-elect the incumbent Defendants who then were perpetuating the bribery scheme; and that those misrepresentations harmed Plaintiffs by enabling Defendants to continue the bribery scheme unimpeded at great risk to the Company. (*Id.* at 33). The Court held that "these detailed allegations . . . are sufficient to meet the 'essential link' requirement under Section 14(a) for purposes of surviving the FirstEnergy Defendants' motion to dismiss." (*Id.* at 34).

Movants identify the controlling question as "whether a complaint sufficiently pleads the element of causation for a Section 14(a) claim . . . ." (ECF No. 95-1 at 5). Taking the question as it is posed, the absence of that required element necessarily would affect the outcome in this Court in a material way. If the answer is "yes," then the Section 14(a) claim can proceed; if "no," then the claim would be dismissed. Regardless of whether the remainder of the case could continue, the disposition of the Section 14(a) claim materially affects the litigation. *See Baker & Getty Fin. Servs.*, 954 F.2d at 1172 n.8.[2] Accordingly, Movants have framed a controlling question as per the first criterion of § 1292(b).

---

[2] Given this "material effect" standard in the *Baker & Getty* case, the Court need not reach parties' arguments about whether the state-law claims in this action could proceed under supplemental jurisdiction if the Section 14(a) claim were dismissed.

### B. Substantial Ground for Difference of Opinion

The second criterion in § 1292(b) requires that there be substantial ground for difference of opinion. Movants quote this Court's acknowledgement that "[t]he Sixth Circuit has yet to define 'transaction causation' for purposes of a Section 14(a) claim under circumstances analogous to those presented here." (ECF No. 95-1 at 7 (quoting ECF No. 93 at 30)). "In the absence of guidance from the Sixth Circuit," Movants state, "this Court sided with the minority view" and thus left substantial ground for difference of opinion. (*Id.* at 8).

Movants misunderstand the Court's opinion as having "sided with the minority view" on transaction causation. Rather, the Court discussed several cases that "sustained Section 14(a) claims where shareholder-plaintiffs have alleged they would not have voted to re-elect the current directors or approve executive compensation plans if they had been told the truth about their company through truthful proxy statements" (ECF No. 93 at 30); recognized the "more common approach, which *generally* declines to find causation based on re-election of board members and 'later misconduct undertaken by' them" (*Id.* at 32 (emphasis added)); and held that Plaintiffs adequately pled causation because they "allege far more than mere mismanagement or an isolated bad act." (*Id.* at 33).

In the Court's view, *even if* the "more common approach" applies, Plaintiffs have pled enough to survive dismissal. The proxy misstatements in question were a key part of the alleged scheme; not only did they allow the incumbent Defendants to continue the bribery post-election, but they also staved off shareholder proposals for increased transparency and elicited the incentive-based compensation that made the scheme so personally profitable to Defendants. (*Id.*). These additional facts distinguish Plaintiffs' Complaint from the comparatively disconnected proxy misrepresentations that the "common approach" contemplates. *Cf. In re Browning-Ferris Indus.*,

*Inc. S'holder Derivative Litig.*, 830 F. Supp. 361, 370 (S.D. Tex. Mar. 3, 1993) ("injuries occasioned by mismanagement or breach of fiduciary duty [are] not redressable under the proxy rules *simply by virtue of the fact* that acts were committed by directors who would not have been elected but for the proxy solicitation") (emphasis added) (internal quotation omitted); *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992) ("*[T]he mere fact* that omissions in proxy materials, by permitting directors to win re-election, *indirectly* lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss.") (first emphasis added); *In re iBasis, Inc. Derivative Litig.*, 532 F. Supp. 2d 214, 222 n.7 (D. Mass Dec. 4, 2007) (applying Section 14(a) "*anytime* a director commits a bad act and is re-elected without the bad act being disclosed in the proxy statement . . . is untenable") (emphasis added).

Along these lines, district courts in this circuit have declined certification where the "request for interlocutory appeal relies upon a mischaracterization" of the order to be appealed. *Black v. Pension Ben. Guar. Corp.*, 2011 WL 4595254, at *2 (E.D. Mich. Oct. 3, 2011); *see also Plate v. Johnson*, 339 F. Supp. 3d 759, 765 (N.D. Ohio Oct. 18, 2018) ("this case does not actually present the controlling question of law that the defendants want certified for interlocutory appeal"). Had the Court chosen the minority view, as Movants assert, then there would be substantial ground for disagreement (that being, naturally, the prevalence of the majority view). But the Court considered the "more common" approach and held that Plaintiffs' claims survive dismissal under either standard. Therefore, the pleading sufficiency question Movants propose to certify has no substantial ground for disagreement. Prong two of § 1292(b) is not satisfied.

### C. Materially Advancing the Ultimate Termination of Litigation

The third factor—that an immediate appeal may materially advance the termination of litigation—follows from the second. Asking the Court of Appeals to weigh in on an issue for which

6

there is no substantial ground for disagreement serves to prolong litigation, not to shorten it. Where there *is* disagreement to be resolved is on the "majority" versus "minority" views of transaction causation; but the Sixth Circuit's pronouncement on that issue would be of no consequence here because, as discussed, Plaintiffs' claims survive under either framework.

Furthermore, the Court reserved ruling on an alternative theory: "whether shareholders' votes to approve executive compensation separately establishes causation under Section 14(a)." (ECF No. 93 at 34 n.14). Given Plaintiffs' allegations that the compensation scheme directly incentivized Defendants' misconduct (*Id.* at 29), this arguably is a more direct causal chain than the re-election theory. Consequently, a reversal on appeal likely would include a remand to this Court for consideration of the executive compensation theory, leaving the ultimate termination of litigation even more distant than it is now.

Under these circumstances, "an interlocutory appeal is as likely to cause material delay as it is to cause material advancement of the termination of the litigation." *Waldon v. Cincinnati Pub. Sch.*, 941 F. Supp. 2d 884, 892 (S.D. Ohio Apr. 24, 2013). Accordingly, the more efficient course is to move the case forward in this Court.

\* \* \*

In summary, Movants cannot satisfy the three statutory criteria of § 1292(b). Movants' proposed question for certification ("Whether a complaint sufficiently pleads causation . . . ?") is controlling, *ipso facto*; but there is not a substantial ground for difference of opinion given how the Court analyzed the causation element. The narrower question (How would the Sixth Circuit define transaction causation?) has substantial ground for difference of opinion; but it is not controlling. Neither question would materially advance the ultimate termination of litigation: the former is answered, and the latter is academic. These missing criteria reveal overall that this case

7

is not the exceptional sort that should be certified for interlocutory appeal. The Court will exercise its discretion, consistent with the statute and in the interest of efficient case management, and decline to certify the interlocutory appeal.

## IV. CONCLUSION

For the above reasons, Individual Defendants' Motion To Certify Order For Interlocutory Appeal (ECF No. 95) is **DENIED**.

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

**DATED: November 12, 2021**